**William MARKS, Appellant**

v.

**The STATE of Texas, Appellee**

NOS. 14–15–00064–CR, 14–15–00065–CR, 14–15–00066–CR

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed April 27, 2017

Discretionary Review Granted September 13, 2017

Daucie Shefman Schindler, Houston, TX, for Appellant.

Kimberly Aperauch Stelter, Houston, TX, for State.

Panel consists of Chief Justice Frost and Justices Boyce and Christopher.

## OPINION

Kem Thompson Frost, Chief Justice

Appellant William Marks challenges his three convictions for violating the Private Security Act by accepting employment as an armed security guard without holding the proper commission. Appellant asserts that the judgments are void because the indictments failed to negate various non-applicability sections of the Private Security Act that he claims must be negated for each of the indictments to allege an offense. Appellant also asserts that the trial court erred in allowing the State to amend the indictments. We conclude that the judgments are not void but that the trial court reversibly erred by allowing the State to amend the indictments over appellant's objection that the amended indictments charged appellant with new and different offenses. In doing so, we address an issue of apparent first impression in Texas—whether a trial court's violation of article 28.10(c) of the Code of Criminal Procedure is subject to a harm analysis under *Cain v. State*—and we conclude that it is. We reverse and remand.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In each of the three original indictments, appellant was charged with the misdemeanor offense [1] of "unlawfully, intentionally[,] and knowingly act[ing] as a guard

---

1. Grand juries empaneled in district courts shall inquire into misdemeanors, and all indictments returned for misdemeanors returned into the district courts shall be certified to the county courts or other inferior courts having jurisdiction to try them for trial. *See* Tex. Const. art. V, § 17.

company, by providing security services, without holding a license as a security services contractor" on three different dates. Appellant filed motions to quash the indictments, asserting that the facts alleged in each of the indictments did not constitute a criminal offense. In particular, appellant asserted that the Private Security Act does not apply to a person who has full-time employment as a peace officer. The State then filed motions for leave to amend each of the indictments to allege that on the respective dates appellant "did then and there unlawfully, intentionally[,] and knowingly accept employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission." At the hearing on the State's motions, appellant objected to the State's requests to amend the indictments on the grounds that the amendments alleged new and different offenses. The trial court granted the State's motions for leave to amend the indictments.[2] The trial court did not hold a hearing on the motions to quash or rule on the motions.

In each case appellant filed a second motion to quash. Again, appellant alleged that the amendments charged him with new offenses. Appellant argued the amendments prejudiced him because the offenses alleged in the amended indictments occurred outside of the statute of limitations. The trial court did not hold a hearing on these motions to quash, nor did the trial court rule on the motions.

## The Jury Trial

The three cases were tried together in one jury trial as to guilt or innocence. The State argued that appellant violated the Private Security Act by accepting employment as a security guard when he was not commissioned to carry a firearm. Appellant asserted that he did not need a commission to carry a firearm because he was a full-time peace officer working for the City of Kenefick. Appellant asserted alternatively that if he did not qualify as a full-time peace officer, he did not intentionally or knowingly violate the Private Security Act because he believed he was a full-time peace officer.

At trial, the evidence showed that U.S. Security Associates, a company in the business of providing security officers to work as security guards for private companies, employed appellant to work as an armed security officer. The evidence also showed that, as part of his employment with U.S.

2. In Cause No. 1852392, the amended indictment alleged: "The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, WILLIAM MARKS, hereafter styled the Defendant, heretofore on or about JANUARY 25, 2011, did then and there unlawfully, intentionally[,] and knowingly accept employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission."

In Cause No. 1852393, the amended indictment alleged: "The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, WILLIAM MARKS, hereafter styled the Defendant, heretofore on or about MARCH 29, 2012, did then and there unlawfully, intentionally[,] and knowingly accept employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission."

In Cause No. 1852394, the amended indictment alleged: "The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, WILLIAM MARKS, hereafter styled the Defendant, heretofore on or about MARCH 30, 2012, did then and there unlawfully, intentionally[,] and knowingly accept employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission."

Security Associates, appellant worked as an armed security officer at a large department store on each of the dates alleged in the three indictments. Anthony Ybarra, an employee of U.S. Security Associates, testified that the company provides two types of security officers: (1) commissioned security officers who carry guns and (2) non-commissioned security officers who do not carry guns. Appellant accepted employment with U.S. Security Associates as a security officer who carried a gun as part of his duties.

The Texas Department of Public Safety is in charge of issuing commissions to individuals to carry firearms. Renearl Bowie, the Department's assistant director, testified that appellant was not commissioned.

A fraud investigator for the District Attorney's Office, George Walter Jordan IV, testified that he concluded from subpoenaed records that appellant received compensation from the City of Kenefick for serving warrants, but was not officially on the city's payroll. Jordan testified that in 2011 appellant worked 288 hours, but to have been considered a fulltime city employee, appellant would have needed to work 1664 hours. According to Jordan, a full-time employee making minimum wage would earn $12,064 per year. In 2011, appellant made approximately $3,800 from his city employment. Appellant also received some employment benefits from the city, such as the use of a police vehicle. Jordan did not include any of those benefits in his calculations.

Appellant testified that he graduated from the police academy in 1983 and is a certified peace officer. According to appellant, he contacted the Texas Commission on Law Enforcement Officer Standards and Education (now known as the Texas Commission on Law Enforcement) about his private security work. After speaking with a representative, appellant concluded that accepting the job would be legal. Appellant testified that he did not intentionally violate the Private Security Act.

The jury found appellant guilty as charged in each of the three amended indictments. The trial court assessed punishment at one year's confinement in the Harris County Jail for each count, probated over one year, and ordered the sentences to run concurrently.

## Motion for New Trial

Appellant filed a motion for new trial in each case asserting the following:

(1) Article 28.10(c) of the Code of Criminal Procedure provides that an indictment may not be amended over a defendant's objection if the amended indictment charges an additional or different statutory offense.

(2) The amendments to the three indictments charged appellant with different statutory offenses.

(3) The trial court violated article 28.10(c) of the Code of Criminal Procedure by granting the State's motion for leave to amend the indictments over appellant's objection that the amended indictments charged appellant with new and different offenses.

(4) The amended indictments alleged new offenses that were precluded by the two-year statute of limitations in article 12.02 of the Code of Criminal Procedure because the alleged offenses occurred more than two years before the date the indictments were amended.

(5) The statute of limitations was not tolled under article 12.05(b) of the Code of Criminal Procedure because the original and amended indictments did not allege the same conduct, act, or transaction.

The trial court signed an order denying appellant's motions for new trial.

Appellant challenges his convictions, raising three appellate issues.

## II. Issues and Analysis

### A. Was it necessary for the indictments to negate the non-applicability provisions to allege an offense?

In his second issue, appellant asserts that the judgments are void because the indictments failed to negate various non-applicability sections of the Private Security Act that he claims must be negated for each indictment to allege an offense.

Texas Occupations Code section 1702.322, entitled "Law Enforcement Personnel" provides:

This chapter does not apply to:

(1) a person who has full-time employment as a peace officer and who receives compensation for private employment on an individual or an independent contractor basis as a patrolman, guard, extra job coordinator, or watchman if the officer:

(A) is employed in an employee-employer relationship or employed on an individual contractual basis:

(i) directly by the recipient of the services; or

(ii) by a company licensed under this chapter;

(B) is not in the employ of another peace officer;

(C) is not a reserve peace officer; and

(D) works as a peace officer on the average of at least 32 hours a week, is compensated by the state or a political subdivision of the state at least at the minimum wage, and is entitled to all employee benefits offered to a peace officer by the state or political subdivision;

(2) a reserve peace officer while the reserve officer is performing guard, patrolman, or watchman duties for a county and is being compensated solely by that county;

(3) a peace officer acting in an official capacity in responding to a burglar alarm or detection device; or

(4) a person engaged in the business of electronic monitoring of an individual as a condition of that individual's community supervision, parole, mandatory supervision, or release on bail, if the person does not perform any other service that requires a license under this chapter.

Tex. Occ. Code Ann. § 1702.322 (West, Westlaw through 2015 R.S.). In addition to this non-applicability provision, subchapter N of Chapter 1702 contains other sections listing various types of persons or entities to which Chapter 1702 "does not apply." *See* Tex. Occ. Code Ann. §§ 1702.321, 1702.323–.332 (West, Westlaw through 2015 R.S.). Appellant asserts that the indictments must negate these non-applicability provisions to allege an offense. According to appellant, if the indictments failed to negate these provisions, then the indictments did not allege an offense and so did not vest the trial court with jurisdiction, making the judgments void.

We presume, without deciding, that if the indictments had to negate the non-applicability provisions, failing to do so would mean that the indictments did not allege an offense, that the trial court lacked jurisdiction, and that the judgments are void. The Court of Criminal Appeals recently concluded that an indictment for violating a provision of the Private Security Act need not negate the non-applicability provisions. *See Baumgart v. State*, 512 S.W.3d 335, 348–50, 2017 WL 782725, at *9–10 (Tex. Crim. App. 2017). Because the indictments were not required to negate the non-applicability provisions, even under the foregoing presumptions, the judg-

ments are not void. We overrule appellant's second issue.

**B. Did the trial court reversibly err in allowing the State to amend the indictments over appellant's objection that the amended indictments charged appellant with new and different offenses?**

Under his first issue, appellant argues that the trial court erred and violated article 28.10(c) of the Code of Criminal Procedure by allowing the State, over appellant's objection, to amend the indictments to allege new and different offenses. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c) (West, Westlaw through 2015 R.S.).

*1. Preservation of Error*

 We begin by determining whether appellant preserved error in the trial court. To preserve an issue for appellate review, a complaining party must (1) make a timely and specific objection, request, or motion, and (2) secure an express or implied ruling or object to the trial court's refusal to rule.[3] *See* Tex. R. App. P. 33(a). The objection, request, or motion must be specific enough "to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Id.* The Court of Criminal Appeals has stated that "all the party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Layton v. State*, 280 S.W.3d 235, 239 (Tex. Crim. App. 2009) (internal quotations omitted).

At a hearing in the trial court on the State's motions for leave to amend the indictments, appellant objected to the pro-

posed amendments on the ground that the amended indictments alleged new and different offenses:

[Trial Court]: The State's [sic] now asked to amend [the indictments] and I believe you are objecting; is that correct?

[Appellant's Trial Counsel]: I am, Your Honor.

[Trial Court]: What's your objection?

[Appellant's Trial Counsel]: The objection is that the amended indictment [the State] is proposing has alleged completely new offenses. It's not part of the Security Act violation.

[Trial Court]: It is. It's a different part of the statute. Same statute. The same statute actually one up. Still the same statute.

[Appellant's Trial Counsel]: It's not exactly the same offense, Your Honor. It's a different one, if I understand correctly.

[Trial Court]: Same statute. Different subsection. I'm initialing them.

They are granted. Anything further?

[Appellant's Trial Counsel]: The reason for our objection is to amend the indictment alleges [sic] a completely new offense. That completely, by the statute of limitations—these cases are well over two years old. I'm going to object to the Judge's granting his motion to amend the indictments.

 Under article 28.10(c) of the Code of Criminal Procedure, an indictment may not be amended over the defendant's objection as to form or substance if the amended indictment charges the defendant with an additional or different offense. *See* Tex. Code Crim. Proc. Ann. art. 28.10(c). Appellant timely objected to the amend-

---

**3.** The complaining party also must comply with the requirements of the Texas Rules of

Evidence or the Texas Rules of Civil or Appellate Procedure. Tex. R. App. P. 33.1(a).

ments, voicing his complaint with sufficient specificity to make the trial court aware of the problem under article 28.10(c). Appellant effectively communicated that the trial court should not allow the State to amend the indictments because the amended indictments alleged new and different offenses. *See Layton*, 280 S.W.3d at 239–40. Though the trial court did not expressly overrule appellant's objection, the trial court expressly granted the State's motions for leave to amend the indictments. By granting the motions after appellant lodged his objection, the trial court implicitly overruled appellant's objection. *See Montanez v. State*, 195 S.W.3d 101, 104–05 (Tex. Crim. App. 2006). We conclude that appellant preserved error in the trial court as to his complaint that the trial court erred and violated article 28.10(c) by permitting the State, over appellant's objection, to amend the indictments to allege new and different offenses.[4] *See Layton*, 280 S.W.3d at 239–40; *Montanez*, 195 S.W.3d at 104–05; *Duncan v. State*, 850 S.W.2d 813, 814 (Tex. App.–Houston [14th Dist.] 1993, no pet.).

### 2. Error Analysis

■ We now address whether the trial court erred in granting the State leave to amend the indictments over appellant's objection. In seeking leave to amend the indictments, the State sought to charge appellant with "unlawfully, intentionally[,] and knowingly accept[ing] employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission" instead of "unlawfully, intentionally[,] and

knowingly act[ing] as a guard company, by providing security services, without holding a license as a security services contractor."

Texas Code of Criminal Procedure article 28.10, entitled "Amendment of indictment or information," provides:

(a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.

(b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.

(c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

Tex. Code Crim. Proc. Ann. art. 28.10 (West, Westlaw through 2015 R.S.). Article 28.10 prevents the State from amending an indictment over a defendant's objection if the amendment charges a "different offense" or prejudices the defendant's substantial rights. *See id.*; *Flowers v. State*, 815 S.W.2d 724, 725 (Tex. Crim. App. 1991).

---

4. In his first issue, appellant asserts that "[t]he trial court erred by denying [appellant's] Motion to Quash Indictment at trial and subsequent Motion for New Trial when the State Amended the indictments to allege a new offense over [appellant's] objection and outside the statute of limitations." To the extent appellant asserts that the trial court erred

in denying either his first motion to quash or his second motion to quash in any of the three cases, appellant failed to preserve error because the trial court did not rule explicitly or implicitly on any of these motions. *See* Tex. R. App. P. 33.1(a); *Ford v. State*, 868 S.W.2d 875, 877 (Tex. App.–Houston [14th Dist.] 1993, pet. ref'd).

Texas Occupations Code section 1702.388, entitled "Violation of Chapter; Offense," provides:

(a) A person commits an offense if the person violates a provision of this chapter for which a specific criminal penalty is not prescribed.

(b) An offense under this section is a Class A misdemeanor, except that the offense is a felony of the third degree if the person has previously been convicted under this chapter of failing to hold a license, registration, endorsement, certificate or commission that the person is required to hold under this chapter.

Tex. Occ. Code Ann. § 1702.388 (West, Westlaw through 2015 R.S.). The State's initial indictments alleged that appellant engaged in conduct that constitutes a violation of Texas Occupations Code section 1702.102(a). That statute, entitled "Security Services Contractor License Required; Scope of License," provides:

(a) Unless the person holds a license as a security services contractor, a person may not:

(1) act as an alarm systems company, armored car company, courier company, guard company, guard dog company, locksmith company, or private security consultant company;

(2) offer to perform the services of a company in Subdivision (1); or

(3) engage in business activity for which a license is required under this chapter.

Tex. Occ. Code Ann. § 1702.102(a) (West, Westlaw through 2015 R.S.). Under section 1702.108, a person acts as a guard company if the person "engages in the business of or undertakes to provide a private watchman, guard, or street patrol service on a contractual basis for another person to ... (1) prevent entry, larceny, vandalism, abuse, fire, or trespass on private property; (2) prevent, observe or detect unauthorized activity on private property...." Tex. Occ. Code Ann. § (West, Westlaw through 2015 R.S.). Only the original indictments contained the acts-as-a-guard-company allegations.

The State's amended indictments instead alleged that appellant engaged in conduct that constitutes a violation of Texas Occupations Code section 1702.161(a). See Tex. Occ. Code Ann. § 1702.161 (West, Westlaw through 2015). Section 1702.161, entitled "Security Officer Commission Required," provides:

(a) An individual may not accept employment as a security officer to carry a firearm in the course and scope of the individual's duties unless the individual holds a security officer commission.

(b) An individual employed as a security officer may not knowingly carry a firearm during the course of performing duties as a security officer unless the board has issued a security officer commission to the individual.

(c) A person may not hire or employ an individual as a security officer to carry a firearm in the course and scope of the individual's duties unless the individual holds a security officer commission.

Id. Section 1702.388 makes it a criminal offense for a person to violate a provision of Chapter 1702 for which a specific penalty is not prescribed. See id. § 1702.388. See Baumgart v. State, 512 S.W.3d 335, 348–49, 2017 WL 782725, at *9 (Tex. Crim. App. 2017). Sections 1702.102(a) and 1702.161(a) are provisions of Chapter 1702, and no specific penalty is prescribed for a violation of either section. See Tex. Occ. Code Ann. § 1702.101, et seq.; Baumgart, 512 S.W.3d at 348–49, 2017 WL 782725, at *9. Thus, section 1702.388 makes it a criminal offense for a person to violate section 1702.102(a) or section 1702.161(a) and pre-

scribes the punishment for the offense. *See* Tex. Occ. Code Ann. §§ 1702.102, 1702.161, 1702.388; *Baumgart*, 512 S.W.3d at 348–49, 2017 WL 782725, at *9.

As the Court of Criminal Appeals recently noted, in various sections of the Private Security Act, including sections 1702.102 and 1702.161, the Legislature prohibited certain conduct without prescribing a criminal penalty, and in section 1702.388, the Legislature imposed a criminal punishment for violating any of these prohibitions.[5] *See* Tex. Occ. Code Ann. § 1702.101, *et seq.*; *Baumgart*, 512 S.W.3d at 341–42, 348–49, 2017 WL 782725, at *4, *9. So, the combination of sections 1702.102, 1702.108, and 1702.388 show what it takes to make out a complete offense for acting as a guard company without holding a license as a security services contractor. *See* Tex. Occ. Code Ann. §§ 1702.102, 1702.108, 1702.388; *Baumgart*, 512 S.W.3d at 348–49, 2017 WL 782725, at *9. And, the combination of sections 1702.161(a) and 1702.388 show what it takes to make out a complete offense for accepting employment as a security officer to carry a firearm without a security officer commission. *See* Tex. Occ. Code Ann. §§ 1702.161, 1702.388; *Baumgart*, 512 S.W.3d at 348–49, 2017 WL 782725, at *9.

 Article 28.10 bars the State from amending an indictment over a defendant's

objection if the amendment charges a "different offense" or prejudices the defendant's substantial rights. *See* Tex. Code Crim. Proc. Ann. art. 28.10; *Flowers*, 815 S.W.2d at 725. A "different offense" means a different statutory offense. *Flowers*, 815 S.W.2d at 725. An amended indictment does not charge the defendant with a different offense if the amendment alters an element of the offense charged, or adds a matter to be proved that is not an essential element of the offense, or changes the name of the complainant. *See, e.g., Flowers*, 815 S.W.2d at 727–29 (concluding that the trial court did not violate article 28.10(c) by allowing, over defendant's objection, amendments to the indictment to add an allegation specifically stating how the alleged appropriation of property was unlawful and to change the name of the alleged owner of the property); *Brown v. State*, 155 S.W.3d 625, 628 (Tex. App.–Fort Worth 2004, pet. ref'd) (concluding that the trial court did not violate article 28.10(c) by allowing, over defendant's objection, an amendment to the indictment and that burglary with intent to commit assault and burglary with attempted assault are not different statutory offenses).

The amendments to the indictments in today's case fundamentally changed the nature of the allegations. The State has

---

5. The *Baumgart* court also pointed out that this part of the Occupations Code was a recodification of prior law with no substantive change intended, and that under the prior statute (Revised Civil Statute article 4413(29bb)), each of these sections expressly stated that the prohibited conduct was unlawful and punishable as provided in section 44, which contained the statutory predecessor to section 1702.388. *See Baumgart*, 512 S.W.3d at 341, n. 36, 2017 WL 782725, at *4, n. 36; Act of May 20, 1977, 65th Leg., R.S., ch. 746, § 5, 1977 Tex. Gen. Laws 1870, 1873 (statutory predecessor to section 1702.102(a) providing that "It shall be unlawful and punishable as provided in Section 44 of this Act for any

person to ..."); Act of May 28, 1995, 74th Leg., R.S., ch. 790, § 10, 1995 Tex. Gen. Laws 4085, 4093 (statutory predecessor to section 1702.161(a) providing that "It is unlawful and punishable as provided in Section 44 of this Act ... for any individual to accept employment ..."); Act of May 28, 1995, 74th Leg., R.S., ch. 790, § 15, 1995 Tex. Gen. Laws 4085, 4095 (statutory predecessor to section 1702.388). A "Revisor's Note" indicates that this language was deleted during recodification because the reference to section 44 was "unnecessary." *See Baumgart*, 512 S.W.3d at 341, n. 36, 2017 WL 782725, at *4, n. 36.

not cited and our research has not revealed any Texas case involving a comparable amendment. We find no precedent in which an appellate court concluded that the trial court did not violate article 28.10(c) by allowing, over the defendant's objection, an amendment that so radically altered the accusations. The State does not focus on the differences in the allegations but instead urges different analyses.

The State asserts that the amended indictments alleged the same statutory offense because the Legislature provided the criminal penalty for the conduct alleged in each indictment in the same statute—section 1702.388. See Tex. Occ. Code Ann. §§ 1702.102, 1702.161, 1702.388. The State also asserts that both the original and amended indictments targeted the same conduct—appellant's providing security services in violation of the Private Security Act.

We disagree that the amended indictments alleged the same conduct. The original indictments charged appellant with intentionally or knowingly acting as a guard company without holding a license as a security services contractor. The Legislature prohibited this conduct in section 1702.102(a). See Tex. Occ. Code Ann. § 1702.102. The amended indictments charged appellant with intentionally or knowingly accepting employment as a security officer to carry a firearm without holding a security officer commission. The Legislature prohibited this conduct in section 1702.161(a). See Tex. Occ. Code Ann. § 1702.161. Both sets of allegations relate to providing security services, and both sets of allegations target conduct prohibited in different sections of the Private Security Act. But this commonality does not equate to charging the same statutory offense.

If all criminal conduct for which section 1702.388 provides the criminal penalty

amounted to the same statutory offense for article 28.10(c) purposes, a charging instrument alleging that a defendant intentionally or knowingly acted as an investigations company without holding an investigations-company license would charge the same statutory offense as a charging instrument alleging that a defendant intentionally or knowingly accepted employment as a security officer to carry a firearm without holding a security officer commission, and the State could amend a charging instrument to change from one set of allegations to the other over the defendant's objection. See Tex. Occ. Code Ann. §§ 1702.101, 1702.102. We do not construe the statutory term "different offense" so narrowly.

Presuming for the sake of argument that both the original and amended indictments entailed appellant's providing security services in violation of the Private Security Act, this connection would not mean that both sets of indictments alleged the same statutory offense. Applying the reasonable meaning of "different offense" or "different statutory offense," we conclude that each of the amended indictments alleged a different offense and a different statutory offense from the offense charged in the corresponding original indictment. So, the trial court erred in allowing the State, over appellant's objection, to amend each of the indictments. See Tex. Code Crim. Proc. Ann. art. 28.10(c); Nichols v. State, 52 S.W.3d 501, 503 (Tex. App.–Dallas 2001, no pet.). Having found that the trial court erred in granting the State's motions for leave to amend the indictments over appellant's objection, we now address whether this error is subject to a harm analysis.

### 3. Applicability of a Harm Analysis

■ Two decades ago, in Cain v. State, the Court of Criminal Appeals handed

down a landmark opinion that changed how we evaluate harm in criminal appeals. *See* 947 S.W.2d 262 (Tex. Crim. App. 1997), *superseded in part on other grounds by* Tex. R. App. P. 44.2. Before that decision, reviewing courts did not apply a harm analysis to a trial court's error in violating article 28.10(c), or any other part of article 28.10. *See Brown v. State*, 828 S.W.2d 762, 764 (Tex. Crim. App. 1991) (concluding that "no breach of Article 28.10 should be tolerated in the trial court, regardless of its probable effect on the outcome of trial, and ... no speculation about the impact of such an error under [the rule of appellate procedure governing harm analyses] should be attempted on appeal"); *McCoy v. State*, 889 S.W.2d 354, 359 (Tex. App.–Houston [14th Dist.] 1994, pet. ref'd) (same as *Brown*). Though the high court's landmark decision in *Cain* did not involve an error under article 28.10, *Cain's* pronouncements reach all types of error:

> Except for certain federal constitutional errors labeled by the United States Supreme Court as "structural," no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is categorically immune to a harmless error analysis. Of course, where the error involved defies analysis by harmless error standards or the data is insufficient to conduct a meaningful harmless error analysis, then the error will not be proven harmless [under the rule of appellate procedure governing harm analyses]. Hence, it may be true that some kinds of errors (particularly jurisdictional ones) will never be harmless under the [rule of appellate procedure governing harm analyses] and that some other kinds of errors will rarely be harmless. But, appellate courts should not automatically foreclose the application of the harmless error test to certain categories of error.

*Cain*, 947 S.W.2d at 264 (footnote omitted). In later cases, the Court of Criminal Appeals has emphasized "*Cain*'s holding that only errors labeled as structural by the Supreme Court are immune from a harm analysis." *Mercier v. State*, 322 S.W.3d 258, 263 (Tex. Crim. App. 2010). The high court has relied on *Cain* as the basis for applying a harm analysis to a trial court's presumed violation of article 28.10(a). *See* Tex. Code Crim. Proc. Ann. art. 28.10; *Wright v. State*, 28 S.W.3d 526, 531–32 (Tex. Crim. App. 2000). Nonetheless, the parties have not cited and research has not revealed any Texas case addressing whether, after *Cain*, an article 28.10(c) error is subject to a harm analysis.

We see a potential distinction between an article 28.10(a) error and an article 28.10(c) error. Applying a harm analysis to an article 28.10(c) error in allowing an indictment to be amended to charge the defendant with a different offense arguably would violate the canon of statutory construction that, if reasonably possible, courts should avoid construing any part of a statute to be redundant of another part of the statute. *See* Tex. Code Crim. Proc. Ann. art. 28.10; *Rocha v. State*, 16 S.W.3d 1, 14 (Tex. Crim. App. 2000) (discussing and applying canon of statutory construction that courts should avoid construing any part of a statute to be redundant of another part of the statute if reasonably possible). Under article 28.10(c), an indictment may not be amended over the defendant's objection as to form or substance if either (1) the amended indictment charges the defendant with an additional or different offense or (2) the defendant's substantial rights are prejudiced. *See* Tex. Code Crim. Proc. Ann. art. 28.10. If we were to apply a harm analysis to error under (1), we would apply a nonconstitutional harm analysis, under which the error would not be reversible unless the error prejudiced the defendant's substantial rights. *See* Tex.

R. App. P. 44.2(b). So, applying a harm analysis to the first alternative would be redundant of the second alternative, which covers all pre-trial amendments of indictments over a defendant's objection that prejudice the defendant's substantial rights. See Tex. Code Crim. Proc. Ann. art. 28.10(c); Tex. R. App. P. 44.2(b). One way to avoid this redundancy would be to construe article 28.10(c) as meaning that no harm analysis applies to the first alternative.

But, article 28.10(c) does not expressly say that. Nor does it say that error under article 28.10(c)'s first alternative, by itself, requires reversal of the trial court's judgment. Though *Cain* and its progeny do not address the possibility that a statute might immunize error from a harm analysis, the courts in this line of cases exempt only errors labeled as structural by the Supreme Court of the United States. See *Mercier*, 322 S.W.3d at 263; *Cain*, 947 S.W.2d at 264. The nation's high court has not labeled as structural error a violation of the first alternative in article 28.10(c). So, we conclude that, under *Cain*, a trial court's error in violating the first alternative in article 28.10(c) is not categorically immune to a harmless-error analysis. See *Mercier*, 322 S.W.3d at 263; *Cain*, 947 S.W.2d at 264.

██ Under *Cain*, even when a court does not hold the error categorically immune to a harmless-error analysis, the court will not find the error harmless if the error defies analysis by harmless-error standards or if the data proves insufficient to conduct a meaningful harmless-error analysis. See *Cain*, 947 S.W.2d at 264. For the purposes of our analysis we presume that the error in this case does not defy analysis by harmless-error standards and that the data is sufficient to conduct a meaningful harmless-error analysis. See *id.* We apply a nonconstitutional harm analysis to the trial court's error in violating article 28.10(c). See Tex. R. App. P. 44.2(b).

### 4. Nonconstitutional Harm Analysis

██ Texas Rule of Appellate Procedure 44.2(b) requires the reviewing court to disregard nonconstitutional error that does not affect a criminal defendant's substantial rights. See Tex. R. App. P. 44.2(b); *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Error affects a substantial right when it has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson*, 43 S.W.3d at 4. The error is harmless if the reviewing court, after examining the record as a whole, finds reasonable assurance the error did not influence the jury's verdict or had but a slight effect. See *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The appellant bears no burden to show harm, and the State bears no burden to show lack of harm; instead, the court bears the responsibility of reviewing the record to decide the likelihood that the error had an adverse effect on the trial court proceedings. *Johnson*, 43 S.W.3d at 4–5.

The offenses charged in the original and amended indictments—all misdemeanors—do not implicate appellant's constitutional right to be indicted by a grand jury as to felony offenses. Because that constitutional right does not apply, it plays no part in the harm analysis. See Tex. Const. art. I, § 10.

The record shows that legally sufficient evidence supports appellant's conviction for the offense of intentionally or knowingly accepting employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission. While the record contains evidence that appellant committed these three offenses, the record contains no evidence that would support appellant's

conviction of the offense of intentionally or knowingly acting as a guard company, by providing security services, without holding a license as a security services contractor. The State cites no such evidence. Nor does the State assert that such evidence exists.

The State does not assert that, if the trial court had sustained appellant's objection, the State would have proceeded to trial on the original indictments or undertaken to prove the acts-as-a-guard-company allegations. Instead, the State asserts that if the trial court had sustained appellant's objection, the State would have been able to dismiss the indictments and file the charges the State sought to assert in the amended indictments in separate cases. Absent the trial court's error under article 28.10(c), the State would not have been able to obtain convictions in these cause numbers for the offenses charged in the amended indictments. Nothing in the record suggests that the State had legally sufficient evidence to support convictions under the original indictments or that the State could have proved the acts-as-a-guard-company allegations. If the trial court had sustained appellant's objection and denied leave to amend the indictments, the State could have moved to dismiss the original indictments and then sought to charge appellant in different cases. The State could have proceeded to seek convictions as to the offenses charged in the original indictments. Whether the trial court would have dismissed the original indictments at the State's request or whether appellant would have obtained acquittals as to the offenses charged in these indictments, the error likely had an adverse effect on the trial court proceedings and a substantial and injurious effect or influence in determining the jury's verdict. *See Johnson*, 43 S.W.3d at 4–5; *Nichols*, 52 S.W.3d at 503–04.

The State asserts that appellant suffered no harm by the article 28.10(c) error because appellant had almost two months after the amendments to prepare for trial and because appellant had adequate notice of the charges against him. Even presuming the correctness of these assertions, we conclude that adequate notice and time to prepare do not render this article 28.10(c) error harmless. *See Nichols*, 52 S.W.3d at 503–04.

Appellant also asserts that the two-year statute of limitations in article 12.02 of the Code of Criminal Procedure bars the offenses charged in the amended indictments. Under this statute, an indictment or information for any Class A or Class B misdemeanor may be presented within two years from the date of the commission of the offense, and not afterward. Tex. Code Crim. Proc. Ann. art. 12.02 (West, Westlaw through 2015 R.S.). To the extent appellant asserts that this statute bars the amended indictments, appellant's limitations argument lacks merit because the grand jury presented the original indictments in each of the three cases within two years from the dates of the alleged offenses.

Appellant's main reliance on the statute of limitations seems to be as a way of showing harm by establishing that, even if the State had filed charges in new cases for intentionally or knowingly accepting employment as a security officer to carry a firearm without holding a security officer commission, the two-year statute of limitations would have barred the charging instruments in those cases. Indeed, in arguing that any article 28.10(c) error is harmless, the State posits that, had the trial court denied leave to amend, the State could have filed these charges in different cases, and the two-year statute of limitations would not have barred the charging instruments in those cases. Pre-

suming, without deciding, that this limitations issue informs the harm analysis, we conclude that it does not render the error harmless.

When the trial court granted the State's motions for leave to amend the indictments, more than two years had passed since the respective alleged offense-commission dates. The State does not suggest otherwise; instead, the State asserts that in later cases, on new charging instruments, the limitations-period calculation would not include the interval during which the indictments in the prior cases were pending. *See* Tex. Code Crim. Proc. Ann. art. 12.05 (West, Westlaw through 2015 R.S.). Under binding precedent from the Court of Criminal Appeals, for the State to take advantage of the tolling provision in article 12.05(b), the indictment in the first case and the indictment in the second case both must allege the same conduct, the same act, or the same transaction. *See Hernandez v. State*, 127 S.W.3d 768, 774 (Tex. Crim. App. 2004).

The original indictments alleged that appellant intentionally and knowingly acted as a guard company, by providing security services, without holding a license as a security services contractor. If the charging instruments in later-filed cases alleged that appellant intentionally and knowingly accepted employment as a security officer to carry a firearm in the course and scope of his duties, without holding a security officer commission, the indictments in the second case would not allege the same conduct, the same act, or the same transaction as the original indictments. *See Hernandez*, 127 S.W.3d at 774; *State v. Ojiaku*, 424 S.W.3d 633, 639 (Tex. App.–Dallas 2013, pet. ref'd). So, the State could not invoke tolling to extend the limitations period. *See* Tex. Code Crim. Proc. Ann. art. 12.05; *Hernandez*, 127 S.W.3d at 774; *Ojiaku*, 424 S.W.3d at 639. Therefore, the State's contention—that it could have had the original indictments dismissed and could have asserted the new statutory offenses in different cases—does not support the State's argument that the trial court's error did not affect appellant's substantial rights.

We conclude the trial court reversibly erred in overruling appellant's objection to the amendment of the indictments, and we sustain the first issue to the extent appellant asserts that the trial court erred in this ruling.[6] *See* Tex. R. App. P. 44.2(b); *Johnson*, 43 S.W.3d at 4–5; *Nichols*, 52 S.W.3d at 503–04. The proper appellate remedy for this error is reversal and remand to the trial court for further proceedings on the original indictments. *See Nichols*, 52 S.W.3d at 504–05.

## III. CONCLUSION

The Court of Criminal Appeals recently concluded that an indictment for violating the Private Security Act need not negate the non-applicability provisions of the Private Security Act, contrary to appellant's contention in his second appellate issue. So, the failure-to-negate argument affords appellant no relief. But, we find merit in appellant's challenge to the trial court's allowing the amendments to the indictments. We hold the trial court reversibly erred in granting the State leave to amend the indictments over appellant's objection that the amended indictments charged appellant with new and different offenses. We reverse the judgment in each of the three cases and remand to the trial court

---

6. We need not and do not address (1) the part of the first issue in which appellant asserts error based on the denial of his motion for new trial, or (2) appellant's third issue, in which he asserts that the trial court erred in failing to charge the jury on the defense of mistake of fact.

for further proceedings on the original indictments as if they had not been amended.